```
                                   UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF FLORIDA

                                   CASE NO. 10-20943-Civ-KING
                                          (06-20583-Cr-KING)
                                   MAGISTRATE JUDGE P. A. WHITE
MARIA M. GARCIA,              :

    Movant,                   :         REPORT OF
                                        MAGISTRATE JUDGE
v.                            :

UNITED STATES OF AMERICA,     :

    Respondent.               :
_____
```

## I. Introduction

This matter is before the Court on the movant's motion to vacate pursuant to Title 28, Section 2255, attacking her sentence for conspiracy to commit mail fraud following her guilty plea in criminal case number 06-20583-Cr-KING.

The Court has reviewed the motion to vacate, the Presentence Investigation Report ("PSI"), Government's response, and all pertinent portions of the underlying criminal file.

## II. Claims

Construing the *pro se* movant's arguments liberally, Haines v. Kerner, 404 U.S. 519 (1972), she appears to raise the following claims in her Section 2255 motion:

1.  The trial court violated Garcia's constitutional rights by failing to fashion an appropriate sentence and weighing the circumstances of the case including substantial assistance;

2.  The sentence is plain error and warrants summary judgment;

    3.    The Court violated due process by sentencing Garcia without reviewing her extensive debriefing with the Government and failing to give her full credit for her assistance due to the Government's misrepresentations about her cooperation; and

    4.    Counsel labored under a conflict of interest, falsely promised Garcia would not go to prison, lied, made decisions without consulting her, and failed to review appeal issues with her.

(Cv-DE# 1).

### III. Procedural History

The relevant procedural history of the underlying criminal case is as follows. Garcia and co-defendants William Scott DeLoach and Rosario Licata were charged with conspiracy to commit mail fraud in violation of Title 18, Section 1349. (Crim-DE# 1). Garcia waived indictment. (Crim-DE# 16).

Garcia entered a guilty plea on September 28, 2006. In the written plea agreement, she acknowledged the PSI would be completed following the plea and that the Court would be able to impose a statutory maximum of up to twenty years imprisonment followed by a term of supervised release up to five years, and a fine up to $250,000. (Crim-DE# 35 at ¶ 4). In addition, Garcia agreed to cooperate with PBS&J[1] in its determination, assessment, and collection of restitution of at least $9,758,735. (Crim-DE# 35 at ¶ 4). Garcia and the Government jointly agreed to recommend a guidelines sentence. (Crim-DE# 35 at ¶ 7). Garcia agreed to cooperate with the Government by:

---

[1] Post Buckley Schuh & Jernigan, Inc., is the former employer of Garcia and the other co-defendants from which they admitted embezzling millions of dollars.

>   a. providing truthful and complete information and testimony, and producing documents, records, and other evidence when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding;
>   b. appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and
>   c. making a full, accurate, and complete disclosure to this Office regarding her personal and financial condition, including completing all financial disclosure forms provided by this Office and providing all records concerning her financial condition.

(Crim-DE# 35 at ¶ 8).

The Government reserved the right to evaluate the nature and extent of Garcia's cooperation and inform the Court of such at sentencing. If, at the "sole and unreviewable judgment of this Office" that Garcia's cooperation warranted downward departure, the Government may make a Section 5K1.1 motion at sentencing. (Crim-DE# 35 at ¶ 9). Garcia acknowledged nothing required the Government to file a Section 5K1.1 motion, and that the absence of such a motion would not constitute grounds for withdrawing the plea. (Crim-DE# 35 at ¶ 9). If the Government exercised its discretion to file a 5K1.1 motion, the Court was under no obligation to grant it. (Crim-DE# 35 at ¶ 10).

The Government agreed to recommend a reduction in sentencing by two levels due to acceptance of responsibility and an additional level for assistance, if applicable. (Crim-DE# 35 at ¶ 11). In addition, the Government agreed to recommend a sentence at the low end of the guidelines. However, the Government was not required to

make these recommendations if Garcia:

> 1.  fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct;
> 2.  is found to have misrepresented facts to the government prior to entering into this plea agreement; or
> 3.  commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

(Crim-DE# 35 at ¶ 11).

Garcia and the Government agreed to jointly recommend a base offense level of seven, a twenty-level increase due to a loss amount of between $7 and $20 million, a two-level increase in offense level for sophisticated means, a two-level increase in offense level for abuse of trust, and a three-level reduction for acceptance of responsibility. (Crim-DE# 35 at ¶ 12). This results in a total level of twenty-eight and guidelines range between seventy-eight and ninety-seven months. (Crim-DE# 35 at ¶ 12).

Garcia acknowledged any estimate of the probable sentencing range is a prediction, not a promise, and is not binding. (Crim-DE# 35 at ¶ 13). At the plea hearing, Garcia explained she was satisfied with the advice and assistance of her attorney. (Crim-DE# 33 at T. 5). She conceded the loss amount was between $7 and $20 million and that it was committed through sophisticated means and an abuse of trust. (Crim-DE# 33 at T. 10). She agreed to waive her right to appeal the sentence and restitution. (Crim-DE# 33 at T. 10). She admitted she owed restitution of at least $9,758,735.

(Crim-DE# 33 at T. 11). She acknowledged the possibility of cooperation and substantial assistance was at Government's sole discretion. (Crim-DE# 33 at T. 11). She understood the factual proffer and explanation of charges and admitted she committed the offense charged in Count (1). (Crim-DE# 33 at 17-19).

The PSI calculated a base offense level of seven. (PSI at ¶ 26). Twenty levels were added based on Garcia's responsibility for a loss amount of $9,758,735. (PSI at ¶ 27). Two more levels were added because the offense involved sophisticated means, and for her role in the offense. (PSI at ¶ 28). Two levels were deducted for acceptance of responsibility and one level for cooperation. (PSI at ¶ 34-35). Garcia has zero criminal history points, with a criminal history category of I. (PSI at ¶ 39). Based on a total offense level of twenty-eight and a criminal history category of I, the guidelines call for between seventy-eight and ninety-seven months imprisonment, supervised release between two and three years, fines between $12,500 and $125,000, and restitution. (PSI at ¶¶ 76, 78, 82, 84). Neither Garcia nor the Government objected to the PSI. See (Addenda to the PSI).

On June 4, 2007, the Government filed a motion for downward departure under Section 5K1.1 due to Garcia's substantial assistance. (Crim-DE# 85). At the sentencing hearing, the prosecutor explained Garcia approached the U.S. Attorney's office before it was aware of the criminal conduct and before either of the co-defendants had come forward. She participated in a number of debriefings with the U.S. Attorney's office and FBI agents, she provided helpful information concerning the scope and nature of the offense, and she provided information about other possible illegal conduct occurring within PBS&J. (Crim-DE# 165 at T. 34-35). The Government recommended Garcia receive a 15% reduction, sixty-six

months, due to her cooperation in the embezzlement investigation. However, it argued she should not receive credit for the campaign finance information because it did not substantially assist the Government. The information she provided had credibility and reliability problems, also came from other sources, and did not end up in the indictments. (DE# 180 at T. 7).

Defense counsel sought a greater reduction due to Garcia's assistance. Counsel explained Garcia's extensive cooperation included meetings with FBI agents on April 20, March 11, and July, 2005; ten-hour meeting with internal auditing committee on September 8, 2005; seven-hour sworn statement with the SEC on December 19, 2005, and a second statement on March 23, 2006; meeting with the Department of Justice civil division's commercial litigation branch on June 6, 2006.(Crim-DE# 165 at T. 37-39). Counsel argued Garcia should receive credit for the information she provided on campaign finance because the information she provided directly led to the indictments of two individuals. (Crim-DE# 165 at T. 38). Counsel explained Garcia was not needed as a witness in those cases because the defendants were pleading guilty. (Crim-DE# 165 at T.48). Defense counsel presented the Court with exhibits including FBI reports outlining the extent of Garcia's debriefings and a federal election commission complaint Garcia filed. <u>See</u> (Crim-DE# 165 at 49). The Court granted a continuance overnight to consider the materials counsel provided. (DE# 165 at 52-54, 64, 69). Counsel also noted that Garcia returned to PBS&J real estate and a 401K worth between $2 and $3 million when the embezzlement was uncovered. (Crim-DE# 154 at T. 10). Counsel requested two years of home confinement and five years of probation and restitution. (Crim-DE# 180 at T. 15).

The Court specifically considered Garcia's statement, the PSI,

the plea agreements, arguments and proffers by the attorneys, and documents filed under seal. (Crim-DE# 180 at 18). As to the amount to award Garcia for her assistance, the Court considered the "totality of the case pending before the Judge and the sentences that have heretofore imposed on the others and the magnitude of the crimes committed by this defendant, as well as the other defendants." (Crim-DE# 180 at 24). The Court concluded that Garcia should receive an additional amount of time reduced from the advisory sentence of seventy-eight months. It applied the 15% reduction recommended by the Government but also deducted three more months due to her assistance in the political contribution cases, for which the Government had recommended no credit. (DE# 180 at 25). This resulted in a sentence of sixty-three months. In addition, the Court imposed supervised release for three years and restitution to PBS&J for $9,483,247, and to the Chubb Group for $6,666.66. (DE# 180 at 25, 28); see (Statement of Reasons) (calculating the amount of restitution still due PBS&J, and indicating amount of restitution due Chubbs is $666,666.66).

Defense counsel objected to Garcia's sentence because it: created an unwarranted disparity between Garcia and Licata's sentences;[2] violated Rule 32 with regard to the degree of specificity required to resolve controverted facts between the

---

[2] Licata's guidelines range was between sixty-three and seventy-eight months. The Government did not file a 5k1.1 motion on Licata's behalf although she approached the Government after the embezzlement scheme was uncovered. (Crim-DE# 165 at T. 10). The Government recommended a sixty-three months sentence because Licata profited less than other two co-defendants but was a senior level employee in accounts payable who was integral to the conspiracy. (Crim-DE# 165 at T. 12). The Court sentenced her to sixty-three months with three years of supervised release and restitution of $6,124,520.92 to PBS&J and $666,666.66 to Chubb Group Insurance. (Crim-DE# 165 at T. 13-14). DeLoach, whose guideline range was between ninety-seven and 121 months, was sentenced to ninety-seven months for Count (1), twenty-four months for Count (2), concurrent, three years supervised release for each count, concurrent, and restitution of $18,312,807.32 to PBS&J and $666,666.66 to Chubb. (Crim-DE# 165 at T. 27-28).

parties; and was a marginal reduction that constituted an abuse of discretion. (Crim-DE# 180 at 28-29).

The Court adjudicated Garcia guilty and sentenced her to sixty-three months imprisonment followed by three years of supervised release, and restitution in the amount of $9,483,247.01 to PBS&J and $6,666.66 to Chubbs Group Insurance Company. (Crim-DE# 120, 123).

Garcia raised the following points on direct appeal:

> 1.   This Court has jurisdiction to rule on the merits of defendant's challenge to her conviction based on the Government's violation of the plea agreement notwithstanding the waiver of appeal clause with regard to the sentence only;
> 2.   The Government breached the plea agreement by failing to advise the US Probation Office and Court of all truthful relevant information concerning the history and characteristics of defendant and the offense, including the full nature and extent of her cooperation which, the Government conceded, reached the level of "substantial assistance" for the purpose of post-*Booker* § 5K1.1; and
> 3.   The Court below erred reversibly in granting more deference to the government's mischaracterization of defendant's substantial assistance/cooperation than what the actual facts proved because the judge incorrectly assumed that after *Booker*, a Government motion under § 5K1.1 was necessary and the policy statement factors and commentary were dispositive.

(Garcia's initial brief, case 07-13594).

The Eleventh Circuit affirmed. It found Garcia waived the breach argument because she failed to raise it in trial court, and it did not constitute plain error. The Eleventh Circuit declined to review the departure because there was no authority for it to review that decision and it accordingly dismissed the appeal as to that issue. (Crim-DE# 185).

On February 8, 2010, the Court issued a corrected judgment reflecting the amount of restitution owed to Chubbs is $666,666.66. (Crim-DE# 187).

Garcia filed the instant motion to vacate on March 23, 2010.

## IV. Statute of Limitations

The Government does not argue the motion to vacate was untimely filed.

## V. Standard of Review

Section 2255 authorizes a prisoner to move a sentencing court to vacate, set aside, or correct a sentence where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); see Hill v. United States, 368 U.S. 424, 426-27 (1962). A sentence is otherwise subject to collateral attack if there is a "fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979); Hill, 368 U.S. at 428.

A defendant who pleads guilty "waives all non-jurisdictional challenges to the constitutionality of the conviction" and may only

attack the knowing and voluntary nature of the plea. See Wilson v. United States, 962 F.2d 996 (11th Cir. 1992). To enter into a voluntary plea, the defendant must understand the law in relation to the facts. McCarthy v. United States, 394 U.S. 459 (1969). The court taking the plea must address the defendant personally in open court before accepting the plea "and determine the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(1). The defendant's declarations in open court during the plea colloquy carry "a strong presumption of verity" and cannot be overcome by conclusory or unsupported allegations. Blackledge v. Allison, 431 U.S. 63, 74 (1977); United States v. Medlock, 12 F.3d 185, 187 (11th Cir. 1994).

To prevail on a claim of ineffective assistance of counsel, the movant must establish: (1) deficient performance - that his counsel's representation fell below an objective standard of reasonableness; and (2) prejudice - but for the deficiency in representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984); Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000). In the context of sentencing, a defendant is required to prove that, if counsel had not performed deficiently, the result of his sentencing proceeding would have been different. Glover v. United States, 531 U.S. 198, 203-204 (2001); Forrester v. United States, 349 Fed. Appx. 528 (11th Cir. 2009).

Under the first Strickland prong, judicial scrutiny is "highly deferential" and requires the reviewing court to "indulge [the] strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of

reasonable professional judgment." Chandler, 218 F.3d at 1314 (quoting Strickland, 466 U.S. at 689-90). To be unreasonable, the performance must be such that "no competent counsel would have taken the action that [the petitioner's] counsel did take." Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001)(emphasis omitted). In other words, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).

Under Strickland's second prong, the movant can be said to have been prejudiced by counsel's performance only if there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is probability sufficient to undermine confidence in the outcome. Id. In the context of guilty pleas, a movant alleging ineffective assistance must establish "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 59 (1985). In other words, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial." Id.

Bare and conclusory allegations of ineffective assistance which contradict the record and are unsupported by affidavits or other evidence do not require a hearing. Chandler v. McDonough, 471 F.3d 1360 (11th Cir. 2006) (no hearing warranted in the absence of any specific factual proffer or evidentiary support); Peoples v. Campbell, 377 F.3d 1208 (11th Cir. 2004) (hearing is not required for frivolous claims, conclusory allegations unsupported by

specifics, or contentions wholly unsupported by the record).

## VI. Discussion

(1)-(3)   Downward Departure

In Claim (1), Garcia contends the Court failed to fashion an appropriate sentence by weighing the circumstances of the case including: coming forward prior to being charged; providing more than 100 hours of debriefing; providing information that led to indictments in the Wye and Dickett cases; and turning over Garcia's 401k and other assets to the victim corporation. In Claim (2), she argues the sentence is plain error and warrants summary judgment. In Claim (3), she argues the Court violated due process by sentencing her without reviewing her extensive debriefing with the Government and failing to give her full credit for her assistance due to the Government's misrepresentations about the extent of her cooperation.

Issues are not cognizable on a Section 2255 motion if they were raised and considered on direct appeal absent a showing of changed circumstances. See United States v. Frady, 456 U.S. 152, 167-69 (1982); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Hobson v. United States, 825 F.2d 364, 366 (11th Cir. 1987), *vacated on other grounds*, 492 U.S. 913 (1989).

On direct appeal, Garcia argued the Government failed to present full and truthful evidence supporting the downward departure and that the Court failed to adequately consider the information before it in deciding the extent of the downward departure. No change of circumstance has been demonstrated in this collateral proceeding sufficient to warrant relitigation of these claims. Thus, these claims are barred from review here.

Garcia's attacks on her sentence also fail on the merits. The Guidelines provide that a sentencing court "may" depart from the guidelines upon a motion by the Government stating the Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense as follows:

> (a) The appropriate reduction shall be determined by the court for the reasons stated that may include, but are not limited to, consideration of the following:
>
>   (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
>   (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
>   (3) the nature and extent of the defendant's assistance;
>
>   (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance.

U.S.S.G. § 5K1.1.

"[D]istrict courts are prohibited from considering sentencing factors unrelated to the nature and extent of a defendant's assistance in making § 5K1.1 departures." United States v. Martin, 455 F.3d 1227, 1236 (11th Cir. 2006). "[I]n meting out a substantial assistance departure the court may consider factors outside the § 5K1.1(a) list, but only if they are related to the assistance rendered." United States v. Crisp, 454 F.3d 1285, 1289 (11th Cir. 2006); see U.S.S.G. 5K1.1, application note, background

(focus is on the nature, extent, and significance of the assistance, which must be evaluated on an individual basis). Substantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain. U.S.S.G. 5K1.1, application note 3. The sentencing judge must state the reasons for reducing a sentence under Section 5K1.1. Id.

Here, the Court considered the "totality of the case," including Garcia's statement, the PSI, the plea agreements, arguments and proffers by the attorneys, and documents filed under seal such as FBI agents' reports of her cooperation. (Crim-DE# 180 at 18). The Court considered the 15% reduction that the Government recommended for Garcia's cooperation with regards to the embezzlement investigation. In addition, the Court concluded that Garcia should receive a three-month deduction due to her assistance in the campaign contribution investigation for which the Government had recommended she receive no credit. This resulted in a sentence of sixty-three months whereas her guidelines range was between seventy-eight and ninety-seven months. Garcia's contention that the Court failed to consider the evidence before it is refuted by the record, which indicates the Court continued the sentencing hearing to permit it to review and consider the written materials the parties had submitted, and provide counsel adequate time to present the issues. See (Crim-DE# 180 at T. 16) (just prior to the pronouncement of sentence, defense counsel stating "Thank you for your time and all of your due process, Your Honor."). The extent of the downward departure for Garcia's substantial assistance was within the Court's discretion, supported by the evidence, and stated on the record at the sentencing hearing. No error occurred.

Garcia's suggestion the Court failed to consider her repayment

of real estate and 401K funds toward restitution does not warrant relief. Restitution is an inappropriate basis for granting a downward departure due to substantial assistance under Section 5K1.1. See, e.g., Crisp, 454 F.3d at 1285 (restitution was an inappropriate consideration for Section 5K1.1(a) because it is not an assistance-related factor); United States v. Madden, 221 Fed. Appx. 915 (11th Cir. 2007) (consideration of factors such as deterrence under Section 5K1.1 constituted plain error because they were unrelated to the defendant's assistance to authorities). Accordingly, the Court's failure to state it was departing due to that factor was not an error and cannot support relief.

Garcia has identified no basis for relief regarding the Court's downward departure sentence.[3] Accordingly, Claims (1)-(3) should be denied.

(4) Conflict of Interest

Garcia contends defense counsel was ineffective due to a conflict of interest in that the victim corporation paid Garcia's attorney bill. According to Garcia, counsel made false promises that she was not going to prison, lied, made decisions without consulting her, and failed to review appellate issues with her.

The Sixth Amendment guarantees criminal defendants "the right to be represented by counsel of choice" and "the right to a defense conducted by an attorney who is free from conflicts of interest." See United States v. Ross, 33 F.3d 1507, 1523 (11th Cir. 1994); see also, Wood v. Georgia, 450 U.S. 261, 271 (1981). A movant claiming counsel labored under a conflict of interest must demonstrate: (1) his attorney had an actual, not speculative, conflict of

---

[3] Any suggestion counsel was ineffective for failing to procure a lower sentence likewise lacks merit for the reasons set forth in this Report.

interest, and (2) the conflict adversely affected counsel's performance. United States v. Novaton, 271 F.3d 968, 1010-1011 (11th Cir. 2001). The burden of proof cannot be met by speculative assertions of bias or prejudice. See Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). A movant need not show that the result of the proceeding would have been different without the conflict of interest, only that the conflict had some adverse effect on counsel's performance. Strickland, 466 U.S. at 694. To prove an adverse effect, a defendant must: 1) "point to some plausible alternative defense strategy or tactic" that might have been pursued, 2) "demonstrate that the alternative strategy or tactic was reasonable" under the facts in his case, and 3) "show some link between the actual conflict and the decision to forgo the alternative strategy of defense." Novaton, 271 F.2d at 1011 (citing Freund v. Butterworth, 165 F.3d 839, 860 (11th Cir. 1999)). In the absence of a showing of an "adverse effect," prejudice is not presumed to flow from a conflict of interest. Id. Once a defendant demonstrates a conflict of interest actually affected his representation, he need not demonstrate prejudice to obtain relief. Novaton, 271 F.3d at 1010. Rather, "[p]rejudice is presumed...if the defendant demonstrates that ... 'an actual conflict of interest adversely affected his lawyer's performance.'" Strickland, 466 U.S. at 692, quoting, Cuyler, 466 U.S. at 358; Burden v. Zant, 24 F.3d 1298 (11th Cir. 1994); Porter v. Singletary, 14 F.3d 554 (11th Cir. 1994). A defendant who fails to show both an actual conflict and an adverse affect is not entitled to relief. Novaton, 271 F.3d at 1010.

First, Garcia's contention that a conflict of interest existed is too speculative to support relief. She infers counsel must have been laboring under a conflict of interest because the victim corporation, Garcia's former employer, paid Garcia's attorney. The

fact that the corporation paid the bill, by itself, is insufficient to demonstrate that counsel operated under an actual conflict of interest. See United States v. Tobon-Hernandez, 845 F.2d 277 (11th Cir. 1988) ("payment of legal fees by a third party does not automatically rise to the level of a conflict of interest."); United States v. Scharrer, 614 F. Supp. 234 (S.D. Fla. 1985) (no showing attorney actively represented any interest besides defendant's even though a third party may have agreed to underwrite the fees).

Moreover, assuming an actual conflict of interest existed, Garcia has failed to show the attorney's performance was "adversely affected" by the conflict. Her claim that counsel lied about whether she would spend time in prison is conclusively refuted by the record, which reveals Garcia repeatedly acknowledged she understood she faced up to twenty years in prison, her sentence was not guaranteed, and that nobody had promised her anything other than what was contained in her plea agreement. See (Crim-DE# 33 at T. 11, 13, 17-19); see also (Crim-DE# 33 at T.5) (stating at the plea hearing she was satisfied with counsel and his advice). Garcia also claims counsel was ineffective for failing to discuss appellate issues with her, however, counsel filed a timely notice of appeal and appellate brief on her behalf. She has failed to specify the nature of counsel's failing, explain how it is related to the alleged conflict, or explain how it adversely affected her case. Garcia makes a number of general allegations that counsel lied, made decisions without consulting her, made reckless decisions and was unprofessional. However, these claims are too vague and conclusory to support relief. In fact, the record reveals Garcia received vigorous and able representation that resulted in a downward departure sentence three months lower than the Government's recommendation. She has failed to identify any

alternative tactic or strategy that counsel should have followed but failed to pursue due to a conflict. Under these circumstances, the movant has failed to establish either deficient performance or prejudice stemming arising from an alleged speculative conflict of interest which is contradicted by the record. Thus, Garcia is entitled to no relief on the claim.

Based on the foregoing, it is recommended that the motion to vacate be denied without an evidentiary hearing, and this case be closed.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 10th day of November, 2010.

UNITED STATES MAGISTRATE JUDGE

cc:  Maria M. Garcia, pro se
     Reg. No. 66079-004
     FCI - Danbury
     Federal Correctional Institution
     Inmate Mail/Parcels
     Route 37
     Danbury, CT 06811

     Jan Silverstein
     United States Attorney's Office
     99 NE 4 St.
     Miami, FL 33132